## WILCOX, GIBBS & COMPANY *vs.* OWENS.

1. A guano note which contains the clause "guano sold and guaranteed under analysis of Dr. Means, inspector, Savannah, which analysis has been submitted to me," does not by implication exclude the defense that the fertilizer is not reasonably suited to the purposes for which it was sold.
2. If a contract is of doubtful meaning, it is to be construed against the party who drew it.

Contracts. Promissory notes. Before Judge CRISP. Schley Superior Court. October Term, 1878.

Reported in the opinion.

W. A. HAWKINS; J. A. ANSLEY; J. N. HUDSON, for plaintiffs in error.

GUERRY & SON, for defendant.

JACKSON, Justice.

Suit was brought by the plaintiffs against the defendant on the following contract:

"SAVANNAH, GA., January 4th, 1876.
"$71.00."

"On or before the 1st day of November after date, I promise to pay Wilcox, Gibbs & Co., or bearer, seventy-one dollars, and in case legal means are taken to collect the same, I agree to pay all costs and expenses, including ten per cent. counsel fees and ten per cent. interest from maturity, and I hereby waive all right of exemption of home-

stead and personalty as to this debt, for value received, being for guano and expenses on same, with option of paying for same in cotton delivered at Americus depot, on the basis of seventeen cents per pound for middlings, provided it is so delivered on or before first of November 1876. Guano sold and guaranteed under analysis of Dr. A. Means, inspector, Savannah, which analysis has been submitted to me."

The defendant pleaded that the fertilizer was not reasonably suited to the purpose for which it was sold and bought, and was utterly worthless, and offered evidence to prove those facts, to which evidence plaintiffs objected on the ground that they warranted the guano or fertilizer only to come up to the analysis of Dr. Means, and that this excluded the implied warranty of its fitness or suitableness as a fertilizer, and the right to set up the defense that it was worthless.

The court admitted the evidence, and the jury found for the defendant, and the plaintiffs excepted.

The uniform ruling of this court in all the cases which have been brought here on the subject of fertilizers has been to hold all parties strictly to the contract, and to permit no defense to be made to the claim for payment of fertilizers purchased by planters where they had contracted to make none. If, therefore, by this contract, construed according to the rules of law applicable to all contracts, this defendant has agreed to make no defense except that this fertilizer did not come up to Dr. Means' analysis, he can make no other. Has he done so ? The contract is devised and written, perhaps printed, by the dealers in this fertilizer, and where the meaning is doubtful the doubt must be resolved against them.

In section 2651 of our Code these words are found : "the seller, however, in all cases (unless expressly or from the nature of the transaction excepted) warrants—1. That he has a valid title and right to sell. 2. That the article sold is merchantable, and reasonably suited to the use intended." Therefore in this case the sellers warranted that this fertilizer was merchantable, and reasonably suited to the use intended, unless this warranty be expressly, excepted from

this contract, or unless it is excepted therefrom from the nature of the transaction.

It is not pretended that the warranty of the title is excluded by this guaranty; is the other implied warranty excluded? There are no words in this contract that expressly except this warranty which the law also puts in it; and the nature of the transaction does not except it, because the thing sold was known by both parties to be for fertilizing the soil, that was the use intended, and that use and its adaptation to it are of the very essence of the contract.

It can hardly be said to be of doubtful construction; but if so it would be construed against those who prepared and put out the paper.

The guarantee that the article comes up to Dr. Means' analysis, does not expressly exclude the warranty that it is merchantable and reasonably suited to the use .intended—to-wit, the manuring the land and increasing the crop. The purchaser had a right to stipulate for both, and not to buy unless both were in the contract, and both might well consist without the overthrow of either. The one the law gave the purchaser; the other the express contract gave him. Now if in the express contract it had been covenanted that only this guaranty or warranty should be considered given, that none other was intended, or that any other was excluded, or that the only defense to the note should be that the thing sold did not fill the standard of Dr. Means' analysis, or any words to any such effect were in the express agreement, then this implied warranty of our Code would be excluded, but not otherwise. And on this line are the decisions of this court uniformly, so far as we recall them. In the case in 61 *Ga.*, 392, *Jackson vs. Langston & Crane*, cited by plaintiffs in error, the express warranty necessarily excluded the implied warranty of the Code. The words in that contract are: "It is expressly agreed and understood that I buy said commercial manure for my own use, to be used on lands cultivated by or for me, and it is guaranteed to me as to its effect on crops *only*

as to the analysis of the state inspector, as evidenced by his brand on each and every package, and I hereby accept the said analysis, as evidenced by said brand, as a correct estimate of the commercial value of said fertilizer." Of course these words are utterly inconsistent with any other warranty of its commercial value or fitness for the use intended, and excluded most clearly the implied warranty of the Code.

The case at bar is more like the case in 60 *Ga.*, 521, where the words are, " this fertilizer is sold under the inspection and analysis of Dr. A. Means, inspector at Savannah, and the department of agriculture at Atlanta;" and in that case this court said : " There is certainly no express stipulation that the purchaser of the fertilizer would rely solely on the inspection and analysis referred to, and a stipulation to that effect is not a necessary implication. The language seems to be a mere affirmation of a fact, with no indication that the one fact is intended to render all other facts immaterial. Suppose it were true that the article had been inspected and analyzed by the aggregate scientific skill of the universe, and that, nevertheless, it was not a fertilizer, had no fertilizing property, and was wholly worthless, would the inspection and analysis make the article " merchantable and reasonably suited to the use intended ?"

And the proof was allowed to show that the article was not reasonably suited for fertilizing purposes, and was worthless, and the defense was held good. That case covers this. See also 61 *Ga.*, 67, 364–8–9 ; 60 *Ga.*, 288.

Judgment affirmed.